**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| NAOTERU TSURUTA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:22-CV-00425-SPM |
| ) | |
| SARAH MARGARET TSURUTA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Stay of Implementation of Judgment (Doc. 40) filed by Respondent Sarah Margaret Tsuruta on September 22, 2022. Petitioner filed a response in opposition to the motion on September 23, 2022. For the following reasons, the motion will be denied.

### I.   BACKGROUND

On September 19, 2022, this Court entered judgment in favor of Petitioner Naoteru Tsuruta on his Verified Complaint and Petition for Return of Child Under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), October 25, 1980, 1343 U.N.T.S. 22514, as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 9001 *et seq.* In its Memorandum Opinion and Order, the Court ordered that the minor child of Petitioner and Respondent ( L.T.) "shall be returned to Japan, her country of habitual residence, at Respondent's expense at a reasonable date and time mutually agreed upon by the parties," and that "Respondent shall make all necessary arrangements associated with returning L.T. to Japan." (Doc. 38). On September 23, 2022, Respondent filed a Notice of Appeal. (Doc. 41). On the same day, Respondent filed the instant motion, in which she asks the Court to stay implementation of the Court's order until Respondent can secure immigration authorization and financial security in Japan and

pending resolution of Respondent's appeal. In the alternative, she asks the Court to grant a limited stay until she is able to request a stay in the Court of Appeals.

## II. DISCUSSION

The Supreme Court has held that in considering whether to stay a return order entered under the Hague Convention, courts should apply the four traditional stay factors:

> (1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Chafin v. Chafin*, 568 U.S. 165, 179 (2013) (internal quotation marks omitted). "In every case under the Hague Convention, the well-being of a child is at stake; application of the traditional stay factors ensures that each case will receive the individualized treatment necessary for appropriate consideration of the child's best interests." *Id.* The Supreme Court has also cautioned against the routine granting of stays in Hague Convention cases, noting that routine stays "would conflict with the [Hague] Convention's mandate of prompt return to a child's country of habitual residence." *Id.* at 178. The Court considers each factor in turn.[1]

### 1. Likelihood of success on the merits

The Court finds that Respondent is extremely unlikely to succeed on the merits of her appeal. This was not a close case. For the reasons stated at length in the Court's Memorandum Opinion and Order, Petitioner more than met his burden of showing, by a preponderance of the evidence, that Japan was L.T.'s place of habitual residence as of the date she was removed from Japan in October 2021.

---

[1] Respondent does not acknowledge these factors or expressly discuss them in her motion.

As to the affirmative defenses raised by Respondent, Respondent did not come close to showing clear and convincing evidence that returning L.T. to Japan would subject her to a grave risk of physical or psychological harm, nor did Respondent produce any evidence to support the defense of consent or acquiescence.

In her motion, Respondent does not identify any particular error by the Court on which she believes she is likely to succeed on appeal. The only argument she makes that relates to the merits of the appeal is as follows:

> Within the last three (3) years, the Supreme Court has addressed the standards for the habitual residence inquiry in Hague Convention matters. *See Monasky v. Taglieri*, 140 S.Ct. 719 (2020). The *Monasky* decision overturned prior Eighth Circuit precedent and no matters involving child abduction claims arising under the Hague Convention have been addressed by the Eighth Circuit since. Therefore, this matter presents an issue of first impression in this Circuit.

Resp. Mot., Doc. 40, at 2.

Respondent does not explain how *Monasky* might help her case on appeal, nor is it apparent to this Court. In *Monasky*—which this Court cited extensively in its Memorandum Opinion and Order—the Supreme Court's first holding was that "a child's habitual residence depends on the totality of the circumstances specific to the case" and that "[a]n actual agreement between the parents is not necessary to establish an infant's habitual residence." *Id.* at 723. *Monasky* expressly rejected a categorical requirement that there be an actual agreement between a child's parents to establish the child's habitual residence. *Monasky* did not overturn all of the relevant precedent regarding the factors courts should consider in determining a child's habitual residence, such that any case involving a habitual residence issue would present an issue of first impression for the Eighth Circuit. To the contrary, as set forth in the Court's Memorandum Opinion and Order, the articulation of relevant factors in *Monasky* was entirely consistent with prior Eighth Circuit precedent and with this Court's analysis of the habitual residence inquiry.

3

The second holding in *Monasky* was that "a first-instance habitual-residence determination is subject to deferential appellate review for clear error." *Monasky*, 140 S. Ct. at 723. The Court rejected the argument that *de novo* review should apply. *Id.* at 730 n.5. This holding certainly will not help Respondent on appeal. Even under *de novo* review, the Court believes that Respondent's likelihood of success on the merits would be very low. Under clear error review, the Court finds that likelihood even lower.

For all of the above reasons, this factor weighs heavily against granting a stay.

*2. Whether Respondent will be irreparably injured absent a stay*

Respondent does not expressly argue in her motion that she would be irreparably injured absent a stay. She does argue that she would be unduly prejudiced by the denial of the stay, because she is not presently able to accompany L.T. in moving to Japan. She states that she does not currently have immigration authorization to return to Japan to live there indefinitely, and that she does not have the financial means to finance travel arrangements and living accommodations for her and L.T. in Japan. Respondent also argues that she will be unduly prejudiced if she is required to return L.T. to Japan prior to being afforded the opportunity of appellate review. Finally, Respondent suggests that because Petitioner has in the past failed to comply with the orders and judgments of courts in the United States,[2] she believes that Petitioner may not comply in returning the child to the United States in the event that the Court's judgment is reversed on appeal.

In his response, Petitioner argues that Respondent's failure to renew the relevant residency papers in Japan and visa paperwork in the United States was purposeful, reflecting either a certainty that she would win on the petition for return or a belief that the lack of these papers would be valuable

---

[2] Respondent cites evidence submitted at trail showing that Petitioner has had arrest warrants issued for his failure to pay child support in a case involving his former wife. *See* Respondent's Trial Exhibit A.

should she lose and seek a stay pending appeal. Petitioner also argues that Respondent's assertion that she lacks the financial means to return to Japan is disingenuous in light of the attorney fees Respondent has been expending in this case and in her St. Charles County case and in light of her commitment to pay for her fees incurred in the appeal.

To the extent that Respondent argues that the stay would injure her by impairing her ability to appeal the return order, the Court finds that argument without merit. The return of L.T. to Japan will not render Respondent's appeal moot and will not deprive Respondent of the opportunity for appellate review. *See Chafin*, 568 U.S. at 180 (holding that the return of a child to his or her country of habitual residence does not render moot an appeal of the return order).

The Court also finds little merit in the argument that Respondent would be irreparably harmed because of the financial or logistical problems associated with her own return to Japan. Certainly, moving to Japan with L.T. will be inconvenient and expensive for Respondent. Additionally, the issues identified by Respondent suggest that if the return order is enforced, Respondent may be delayed in joining L.T. in Japan. But Respondent does not explain how either the financial or logistical burdens, or the temporary separation from L.T., will cause irreparable injury to Respondent. Moreover, Respondent states elsewhere in her motion that she "intends to secure . . . immigration authorization and financial assistance promptly," Mot. for Stay, Doc. 40, at 2, suggesting that any separation from L.T. would likely be short-lived.

Respondent's argument that Petitioner may not comply with an order returning the child to the United States should he lose on appeal does not significantly affect the Court's analysis of this factor. The Court acknowledges that Petitioner's past failure to comply with orders in the past is troubling; however, the Court has already found that the likelihood of Petitioner losing on appeal is extremely low.

For all of the above reasons, the Court finds that this factor weighs only minimally in favor of

5

granting a stay. The Court recognizes that prompt compliance with the return order will be burdensome for Respondent, but she has not shown that it will cause irreparable injury. *Cf. Rehder v. Rehder*, Case No. C14-1242RAJ, 2014 WL 7240662, at *7 (W.D. Wash., Dec. 19, 2014) ("Although the court recognizes the burden faced by the mother in this matter, which involves uprooting herself, returning to Germany and seeking a custody determination from a German family court, it simply does not constitute irreparable injury.").

> 3.  *Whether issuance of the stay will substantially injure the other parties interested in the proceeding*

The two other interested parties in this litigation are the minor child (L.T.) and Petitioner. Respondent argues that L.T. will suffer "irreversible and undue psychological harm" if she is forced to return to Japan without her mother. Respondent states that L.T. is only seven years old, that L.T. has been living with Respondent in the United States exclusively since October 15, 2021; that L.T. has never lived away from her mother. Respondent also argues that Petitioner would not suffer any prejudice or harm from the stay, because extending the time before Respondent and L.T. would not alter the status quo amongst the parties and because Respondent and L.T. have spent significant amounts of time in the United States and away from Petitioner throughout the child's life. Respondent also states that she intends to promptly secure immigration authorization and financial assistance, such that granting a stay until she does so would not be unreasonable.

Respondent's suggestion that this Court should grant a stay in part because a stay would not alter the status quo between the parties is contrary to the spirit and purpose of the Hague Convention. The only reason for the current "status quo"—L.T. living in the United States with her mother and not her father—is Respondent's wrongful removal of L.T. from her place of habitual residence. The purpose of the Hague Convention is to secure the prompt return of children to their place of habitual residence—an action that always disrupts the status quo as it exists at the time of the return order. The

Court finds that Petitioner has been, and continues to be, harmed by Respondent's decision to keep his daughter away from him. Granting a stay would lengthen that separation and worsen the harm.

The argument that L.T. would be harmed by a separation from her primary caregiver is somewhat more persuasive; certainly, it would be difficult for a child to be separated from her primary caregiver. But L.T. would also be harmed by continuing her long separation from her father and from her place of habitual residence. Moreover, as discussed above, the separation should be short-lived.

Balancing the harms in light of the purposes of the Hague Convention, the Court finds that this factor weighs against entering a stay.

### 4. Where the public interest lies

Respondent does not specifically address the public interest factor. Petitioner argues that in light of the Hague Convention's preference for the prompt return of children to their places of habitual residence, the public interest weighs against granting a stay. The Court agrees with Petitioner and finds that this factor weighs against entering a stay.

In sum, three of the relevant factors weigh against granting a stay in this case (one heavily), and one weighs slightly in favor of a stay. After weighing all four factors in light of the parties' arguments and the facts of this case, the Court finds that no stay is warranted. Accordingly,

**IT IS HEREBY ORDERED** that Respondent's Motion for Stay of Implementation of Judgment (Doc. 40) is **DENIED.**

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2022.