UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NAOTERU TSURUTA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:22-CV-00425-SPM |
| | ) |
| SARAH MARGARET TSURUTA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Naoteru Tsuruta's Motion for Attorney's Fees and Costs. (Doc. 71). The time for Respondent to file a response has expired, and no response has been filed. For the following reasons, the motion will be granted in part and denied in part.

**I.  BACKGROUND**

Petitioner Naoteru Tsuruta brought this case pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), October 25, 1980, 1343 U.N.T.S. 22514, as implemented by the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq*. On October 15, 2021, Respondent Sarah Tsuruta removed the parties' child, L.T., from Japan to Missouri. On April 12, 2022, Petitioner filed his Verified Complaint and Petition for Return of Child. On August 5, 2022, the Court held an evidentiary hearing, and on September 19, 2022, the Court entered its Memorandum Opinion and Order finding that L.T.'s habitual residence at the time of the removal was Japan and that Respondent had not established an affirmative defense to L.T.'s prompt return. Based on those findings, the Court entered judgment in favor of Petitioner and ordered Respondent to make the necessary arrangements associated with returning L.T. to Japan, at Respondent's expense, at a reasonable date and time mutually agreed upon by the parties. Respondent subsequently requested that implementation of the judgment be stayed pending resolution of her

1

appeal to the Eighth Circuit, but that request was denied by this Court on September 30 and then by the Eighth Circuit on October 17. Over the next few weeks, Respondent did not make arrangements to return L.T. to Japan. On November 17, 2022, at Petitioner's request, the Court entered an order establishing a date certain and procedures for L.T.'s return. The Court gave Respondent a deadline for purchasing plane tickets for herself and L.T. to return to Japan and a deadline for informing Petitioner and the Court of the flight information. The Court also ordered that if Respondent did not provide flight information by the deadline in the Court's order, Petitioner would purchase plane tickets to allow him to come to the United States and accompany L.T. for her return to Japan. Respondent did not provide flight information by the relevant deadline, so Petitioner traveled to the United States, Respondent turned L.T. over to Petitioner in the courtroom of the undersigned on November 29, 2022, and Petitioner accompanied L.T. to Japan. On December 7, 2022, Petitioner notified the Court that L.T. had been returned to Japan.

On February 3, 2023, Petitioner filed the instant motion, seeking a total sum of $38,377.14. This represents $32,441.40 in fees and costs Petitioner paid to his counsel, plus $5,935.74 for the costs Petitioner incurred in returning L.T. to Japan. To support the request, Petitioner submits itemized billing statements for attorney's fees and litigation costs (Exhibit A) and receipts for airline tickets and related travel expenses (Exhibit B). Petitioner's counsel billed his time at a rate of $350.00 per hour.

## II.   LEGAL STANDARDS

The International Child Abduction Remedies Act ("ICARA") provides:

> Any court ordering the return of a child pursuant to an action brought under § 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

2

22 U.S.C. § 9007(b)(3). "[T]he purpose of § 9007 is not only to 'compensate the bearers of the expenses incurred but also 'to provide an *additional deterrent* to wrongful international child removals and retention.'" *Bhattacharjee v. Craig*, No. 4:21-CV-00826-SEP, 2022 WL 2915545, at *1 (E.D. Mo. July 25, 2022) (quoting *Salazar v. Maimon*, 750 F.3d 514, 520 (5th Cir. 2014)). "[T]he burden is on the losing respondent to show that the award is clearly inappropriate." *Id.* (citing *Salazar*, 750 F.3d 520) ("[T]he prevailing petitioner is presumptively entitled to necessary costs and [ICARA] shifts the burden of proof onto a losing respondent to show why an award of necessary expenses would be 'clearly inappropriate.'").

The appropriateness of an award of fees and costs "depends on the same general standards that apply when attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion . . . . There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the [relevant] considerations." *Forcelli v. Smith*, No. 20-699 (JRT/HB), 2021 WL 638040, at *3 (D. Minn. Feb. 18, 2021) (quoting *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013); internal quotation marks omitted). "Courts have applied various case-specific factors in order to determine whether an award of fees is clearly inappropriate, including: the reasonableness of the fees; whether the respondent is blameless for the current state of affairs; whether the case is a difficult one or it falls squarely within the concerns of the Hague Convention; whether the respondent had a reasonable, albeit mistaken, belief at the time of removal that her actions were consistent with the law of the country of habitual residence; and whether the award would affect the respondent's financial ability to care for the children." *Bhattacharjee*, 2022 WL 2915545, at *2 (citing *Mendoza v. Silva*, 987 F. Supp.2d 910, 915-16 (S.D. Iowa 2014)).

### III. DISCUSSION

Applying the above standards, the Court finds that Petitioner's Motion for Attorney's Fees and Costs should be granted for the most part. However, the Court will disallow some of the fees and

expenses because they are not supported by the documents submitted.

Petitioner is presumptively entitled to fees and costs. Respondent, who bears the burden of showing that a request for fees and costs is clearly inappropriate, has made no attempt to make such a showing. Respondent does not argue that any of the relevant equitable factors might warrant a reduction in the award, and the Court finds that they do not. Petitioner's counsel's hourly rate and the number of hours he worked were reasonable in light of the demands of this case, subject to the adjustment discussed below. Respondent is not blameless for the current state of affairs; to the contrary, some of the fees and expenses sought would have been unnecessary had Respondent promptly returned L.T. to Japan following the Court's judgment. Additionally, this case was not a close or difficult one, but one that fell squarely within the concerns of the Hague Convention. Respondent does not argue that she had a reasonable belief at the time of removal that her actions were consistent with the law of Japan, and the Court does not find that the record shows such a belief. Finally, Respondent does not argue that the award sought would affect her financial ability to care for L.T. The Court therefore concludes that Respondent has not carried her burden of that an order awarding the fees and costs sought by Petitioner would not be clearly inappropriate.

Although an award of fees and costs is appropriate, the Court's review of the invoices and other documents submitted by Petitioner suggests that some of the fees and costs are not supported by the documentation provided. The Court therefore find that an award of some of the fees and expenses sought to be clearly inappropriate, and it will not award Petitioner the full amount sought.

### A. Attorney's Fees and Litigation Expenses

In the motion, Petitioner seeks $32,441.40 in fees and litigation expenses Petitioner paid to his counsel. However, the Court's review of the invoices submitted in Petitioner's Exhibit 1 shows that the invoices total only $32,391.40—$50 less than the amount sought. The Court will therefore award the $32,391.40 supported by the invoices.

### B. Travel Expenses

In the motion, Petitioner seeks $5,935.74 in costs associated with returning L.T. to Japan. However, how that number was reached is not at all clear. Petitioner has not included any summary table, spreadsheet, or narrative explanation showing the numbers he used to reach the total, and the documents submitted in support of the request do not make it obvious.

The first several documents in Petitioner's Exhibit 2 match the trip itinerary Petitioner previously submitted to the Court, which showed Petitioner's airfare costs as follows: $816.48 from Petitioner's round-trip travel on from Tokyo to Los Angeles (November 24 to December 1); $750.20 for Petitioner's round-trip travel from Los Angeles to St. Louis (November 28 to November 29), $377.60 for L.T.'s travel from St. Louis to Los Angeles (November 29) and $648.80 for L.T.'s travel from Los Angeles to Tokyo (December 1). (Doc. 62-1). This itinerary clearly encompassed a series of flights that was necessary for Petitioner to come to the United States and to return L.T. to Japan. The total airfare cost was $2,593.08.

The next several documents in Petitioner's Exhibit 2 include an alternative itinerary for Petitioner's and L.T.'s trip to Japan, under which Petitioner and L.T. took flights that were a few hours earlier than those in the original itinerary. This itinerary shows a different ticket for Petitioner's and L.T.'s travel from St. Louis to Los Angeles on November 29 (this one for $804.20), a different ticket for Petitioner's travel from Los Angeles to Tokyo on December 1 (this one for $816.48), and a different ticket for L.T.'s travel from Los Angeles to Tokyo on December 1 (this one for $624.40). It is unclear why, or whether, it was necessary for Petitioner to purchase this second set of tickets. It is also unclear whether Petitioner received any full or partial refunds for the tickets previously purchased. In light of the lack of explanation of these expenses, the Court finds that it would be clearly inappropriate to award them on top of the expenses set forth in Petitioner's original itinerary.

Petitioner's Exhibit 2 also contains copies of a boarding pass for Petitioner's flight from Los

Angeles to Phoenix on November 24 and a trip confirmation for Petitioner's flight from Phoenix to St. Louis on November 27 (with a price in pounds, not dollars). Petitioner does not explain how any travel to or from Phoenix was necessary or related to L.T.'s return to Japan, and the Court finds that it would be clearly inappropriate to award them to Petitioner on top of the cost of the ticket from Los Angeles to St. Louis that was reflected in Petitioner's original itinerary.

Finally, Petitioner's Exhibit 2 includes a receipt dated November 29 for a rental car (total amount $294.88) and a receipt dated November 30 for what appears to be a hotel stay in Los Angeles (total amount $290.00). These expenses presumably reflect the gap between Petitioner's arrival in with L.T. in Los Angeles and the date on which their flight left for Tokyo. The Court finds these expenses were reasonably related to L.T.'s transportation to Japan and will award these expenses.

When the cost of the original trip itinerary is added to the cost of the hotel and rental car, the total reasonable travel costs are $3,177.96.

### IV.  CONCLUSION

For all of the above reasons, the Court finds that Petitioner is entitled to an award of attorney's fees and litigation costs in the amount of $32,391.40 and an award of travel expenses in the amount of $3,177.96, for a total award of $35,569.36.  Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Naoteru Tsuruta's Motion for Attorney's Fees and Costs (Doc. 71) is **GRANTED IN PART** and **DENIED IN PART**. Respondent shall pay attorney's fees and costs to Petitioner in the amount of $35,569.36.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of April, 2023.