# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 10, 2023

Mr. John D. Kershman I
AHEARN & KERSHMAN
Suite 770
230 S. Bemiston
Clayton, MO  63105

    RE:  22-3014  Naoteru Tsuruta v. Sarah Tsuruta

Dear Counsel:

    The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

    Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                           Michael E. Gans
                           Clerk of Court

NDG

Enclosure(s)

cc:    Mr.  Clerk, U.S. District Court, Eastern District of Missouri
       Mr. Jonathan Marks

       District Court/Agency Case Number(s):  4:22-cv-00425-SPM

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 10, 2023

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

    RE:  22-3014  Naoteru Tsuruta v. Sarah Tsuruta

Dear Sir or Madam:

    A published opinion was filed today in the above case.

    Counsel who presented argument on behalf of the appellant and appeared on the brief was John D. Kershman, I, of Clayton, MO.

    Counsel who presented argument on behalf of the appellee and appeared on the brief was Jonathan Marks, of Saint Louis, MO.

    The judge who heard the case in the district court was Honorable Shirley Mensah.

    If you have any questions concerning this case, please call this office.

                        Michael E. Gans
                        Clerk of Court

NDG

Enclosure(s)

cc:  MO Lawyers Weekly

    District Court/Agency Case Number(s):  4:22-cv-00425-SPM

# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-3014

_____

Naoteru Tsuruta

*Plaintiff - Appellee*

v.

Sarah Margaret Tsuruta

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 12, 2023
Filed: August 10, 2023

_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.

_____

MELLOY, Circuit Judge.

In October 2021, Sarah Tsuruta ("Sarah") flew from Japan to Missouri with her and Naoteru Tsuruta's ("Naoteru") child, L.T. In March 2022, Naoteru filed a petition for the return of their child under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") to have L.T. returned to

Japan. The district court[1] found L.T. was "at home" in Japan before Sarah removed the child to the United States. The district court granted Naoteru's petition to have L.T. returned to Japan. Sarah appeals and we affirm.

I.

In 2015, Sarah gave birth to L.T. in Miami, Florida. At the time, Naoteru was living in the U.K. Ten months after L.T. was born, Sarah and L.T. moved to the U.K. to live with Naoteru. In 2018, Naoteru and Sarah married, and the family moved from the U.K. to Japan. While in Japan, L.T. attended school/daycare, learned to speak Japanese and English, engaged in extracurricular activities, traveled, and spent time with extended family. In November 2019, Sarah and L.T. traveled from Japan to Missouri to visit Sarah's family. In February 2020, Sarah and L.T. voluntarily returned to Japan.

Sarah became unhappy with the living situation in Japan and repeatedly told Naoteru she wanted to leave Japan and get a divorce. After continued arguments between Naoteru and Sarah, Naoteru attempted to conceal L.T.'s Japanese passport and expired U.S. passport. On October 15, 2021, Sarah found the concealed passports in Naoteru's work storage facility and went to the U.S. Embassy in Japan. At the Embassy, Sarah reported she feared for her life and her child's safety. The Embassy issued an emergency passport, and the two went directly to the airport and flew back to the United States. Sarah and L.T. had return flights booked for March 15, 2022.

In November 2021, Sarah filed a petition for divorce in Missouri. After learning of the divorce filings in March 2022, Naoteru filed the present petition to have L.T. returned to Japan under the Hague Convention.

---

[1]The Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

II.

The Hague Convention was adopted to address international child abduction by family members. Barzilay v. Barzilay, 600 F.3d 912, 916 (8th Cir. 2010). The Hague Convention does not govern custody battles, instead the Hague Convention determines the proper forum for custody battles. Id. at 916–17. Under the Hague Convention, "a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country[]" where custody will be determined. Monasky v. Taglieri, 140 S. Ct. 719, 723 (2020). Naoteru must show three things to establish a prima facie case for return under the Hague Convention. First, he must show Japan was L.T.'s habitual residence prior to removal in October 2021. Second, he must show the removal of L.T. violated his custody rights under Japanese law. Third, he must show he was exercising his parental rights before L.T. was removed. Barzilay, 600 F.3d at 917. A child's habitual residence is "[t]he place where a child is at home, at the time of removal or retention[.]" Monasky, 140 S. Ct. at 726. An actual agreement between the parents is not required to establish habitual residence, instead "a child's habitual residence depends on the totality of the circumstances specific to the case." Monasky, 140 S. Ct. at 723.

III.

The only contested element of the prima facie case is L.T.'s habitual residence prior to being removed in October 2021. At an evidentiary hearing, Naoteru argued Japan was L.T.'s habitual residence because L.T. had spent most of her time in Japan for the previous three years, attended school in Japan, participated in extracurricular activities in Japan, and gotten to know extended family in Japan. Additionally, L.T. had spent limited time in the United States prior to being removed in October 2021, spending only a few months in Missouri before voluntarily returning to Japan. Sarah argued Japan was not L.T.'s habitual residence because Sarah was coerced into living in Japan, L.T. had significant connections to the United States, Japan was never intended as a permanent residence, and L.T. never acclimated to Japan. To support her coercion argument, Sarah asserted Naoteru had her sign a marriage

-3-

license she didn't understand, controlled all of the finances, isolated L.T. from Sarah by only speaking Japanese, and controlled all important decisions. Sarah also argued Naoteru's petition was an effort to "forum shop." Sarah asserted Naoteru wanted to avoid a child custody case in the United States due to negative experiences in previous U.S. divorce proceedings with a different woman including the issuance of warrants for his arrest for failure to pay child support.

The district court noted the determination of habitual residence "is a 'fact-driven inquiry' and 'depends on the totality of the circumstances specific to the case.'" The district court then found Naoteru had shown by a preponderance of the evidence that Japan was L.T.'s habitual residence prior to removal in October 2021. In reaching this conclusion, the district court relied on several factors including: evidence showing L.T. acclimated to Japan between 2018 and 2021, evidence showing Sarah and Naoteru had a "settled purpose of creating a home in Japan," and a lack of evidence to show Sarah was coerced into living in Japan. The district court concluded the lack of physical abuse, violence, or threats of violence as well as limited evidence of control distinguished this case from other instances where coercion impacted the habitual residence determination. The district court found that Sarah "had mixed feelings about being in Japan and that she was, at times, reluctant to be there. But the facts presented [did] not amount to coercion, and they [did] not significantly undermine the other evidence suggesting that Japan was L.T.'s home and thus her habitual residence." The district court also rejected Sarah's forum-shopping argument, finding that since Japan was L.T.'s habitual residence it was Sarah, not Naoteru, who engaged in forum shopping by removing L.T. from Japan and filing for divorce in Missouri.

Sarah also raised two additional arguments at the district court: (1) returning L.T. to Japan would expose the child to physical or psychological harm and (2) Naoteru consented or acquiesced to L.T. and Sarah's move to Missouri. The district court concluded Sarah failed to provide sufficient proof to show L.T. would be exposed to harm in Japan or that Naoteru consented to L.T.'s removal to Missouri. Sarah appeals, arguing (1) the district court erred in finding Japan was L.T.'s

-4-

habitual residence and (2) Naoteru has "unclean hands" and therefore is precluded from seeking relief.

IV.

A.

Determining habitual residence is a mixed question of fact and law. <u>Monasky</u>, 140 S. Ct. at 730. "Once the trial court correctly identifies the governing totality-of-the-circumstances standard, . . . [t]he habitual residence determination . . . should be judged on appeal by a clear-error standard deferential to the factfinding court." <u>Id.</u> The district court in this case identified the correct standard. Therefore, we review for clear error the determination that L.T.'s habitual residence in October 2021 was Japan.

The district court did not commit a clear error in determining L.T. was "at home" in Japan as of October 15, 2021. L.T. spent most of her time in Japan since 2018. She attended school/daycare in Japan. She participated in activities in Japan. While Sarah might not have intended to spend the rest of L.T.'s life in Japan, Japan is where L.T. was "at home" on the relevant date.

On appeal, Sarah again argues Japan cannot be L.T.'s habitual residence because Sarah was coerced into living in Japan and therefore did not intend to make Japan L.T.'s home. Sarah cites two cases for the proposition that one parent being coerced into living in a country is relevant to the habitual residence determination because it affects the intent of the parents. <u>See</u> <u>Application of Ponath</u>, 829 F.Supp. 363, 368 (D. Utah 1993) ("Petitioner's coercion of respondent by means of verbal, emotional and physical abuse removed any element of choice and settled purpose which earlier may have been present in the family's decision to visit Germany."); <u>Tsarbopoulos v. Tsarbopoulos</u>, 176 F.Supp. 2d 1045, 1049 (E.D. Wash. 2001) ("The verbal and physical abuse of one spouse by the other is one of several factors in the

-5-

Court's determination of the existence of 'shared intent' to make a place the family's 'habitual residence.'"). The district court addressed these cases and found:

> The physical abuse, verbal abuse, and controlling behavior that motivated the courts in both Tsarbopoulos and Ponath are simply not present here. There is no evidence of physical abuse, violence, or threats of violence in this case. Additionally, having considered the testimony of Petitioner and Respondent and having reviewed the text message exchanges between the parties, the court does not find evidence of the type of verbal abuse or controlling behavior that would suggest that Petitioner was coerced or forced into staying in Japan.

Therefore, Sarah's coercion argument on appeal is inconsistent with the district court's factual findings, which are not clearly erroneous.

B.

Sarah also argues, for the first time on appeal, that Naoteru has "unclean hands" which precludes him from seeking relief in this case. "The defense of unclean hands may be invoked when the plaintiff has engaged in willful act[s] concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." Lawn Managers, Inc. v. Progressive Lawn Managers, Inc., 959 F.3d 903, 912 (8th Cir. 2020) (quotation marks and citation omitted). Sarah asserts that Naoteru has unclean hands because he "had multiple outstanding bench warrants for his arrest stemming from his failure to comply with support orders in Arizona."

"This court 'consider[s] newly raised issues only if they are purely legal and no additional factual development is necessary, or where manifest injustice would otherwise result.'" Beaulieu v. Stockwell, 46 F.4th 871, 877 (8th Cir. 2022) (citation omitted). In the district court, Sarah presented evidence regarding Naoteru's previous divorce proceedings. She did so, however, in the context of a "forum shopping" argument. She asserted Naoteru moved to the U.K. to avoid complying with court orders and filed the petition in this case to avoid another divorce proceeding in the United States. The district court correctly noted that the Hague

-6-

Convention aims to reduce forum shopping in child custody cases by ensuring the law of the child's habitual residence determines custody. See Barzilay, 600 F.3d at 922. But, because the district court concluded Japan was L.T.'s habitual residence, the district court found it was Sarah, not Naoteru, "who engaged in the sort of international forum shopping the Convention seeks to prevent when she took the child from her place of habitual residence to a different country and filed divorce proceedings there."

The district court did not make a factual finding as to whether Naoteru's previous legal proceedings related in any manner to these proceedings, something required for the unclean hands doctrine to apply. See e.g., In re Steward, 828 F.3d 672, 685 (8th Cir. 2016) ("unclean hands doctrine is properly used to bar a claim only when the wrongful conduct at issue is the source of that claim"). Further, the factual findings the district court did make suggest the district court believed Sarah, not Naoteru, engaged in wrongful conduct.

Even assuming we may address the "unclean hands" argument for the first time on appeal, it is far from certain that the unclean hands doctrine should apply to petitions under the Hague Convention. See Karpenko v. Leendertz, 619 F.3d 259, 265–66 (3d Cir. 2010) ("We conclude that application of the unclean hands doctrine would undermine the Hague Convention's goal of protecting the well-being of the child, of restoring the status quo before the child's abduction, and of ensuring 'that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" (citation omitted)). Given the factual questions and the lack of a record or findings as to a connection between Naoteru's allegedly improper conduct and this case, this is not the time to decide whether "unclean hands" applies to Hague Convention cases.

V.

For the reasons discussed, we affirm the judgment of the district court.

_____

-7-